oral argument not to exceed 15 minutes per side. Mr. Belli for the appellant. Good afternoon. My name is Dennis Belli and I represent Archie Whalen who appeals his conviction for transporting a minor in interstate commerce and his 30-year prison sentence. I would like to reserve two minutes of rebuttal time.    This bill presents a number of issues for the court's consideration. I would like to start out with addressing the issue involving the right to a public trial. That right is established in the Sixth Amendment and the Supreme Court has stated that the right is designed to assure certain protections and I think the most important one here is that the presence of the public in the police enhances the obligation of a witness to tell the truth. What do you do about the waiver? That of course is the government's key argument here because if you remove the waiver issue there's no question here that the court failed to comply with the criteria of the statute for closing the courtroom in the case of a juvenile witness. Our response is two-fold. Number one that for a valid waiver of a constitutional right to exist that the Johnson v. Zerbest standard from the Supreme Court applies and there must be some showing that the waiver of the right was knowing and intelligent. But you seem to be complaining about a lack of compliance with statutory criteria. As far as the waiver, no. The statute I'm referring to the statute implements the Sixth Amendment. Why wasn't it knowing and intelligent? I guess I'm not following that. It seemed pretty apparent. The government files a motion. They put their cards on the table. Explain to me why if the Zerbest factors are relevant they weren't met. They were not met because the record shows that number one, defense counsel did not respond to the motion and when the court asked defense counsel about his position he thought that the motion that had been filed was simply to exclude the media from the courtroom, not the public. He was aware that some motion was filed but he didn't read it, didn't bother to respond to it and when he was enlightened as to exactly what the government was requesting here, a complete closure of the courtroom when the most important witness testified. I just don't think this is how the knowing and intelligent inquiry works. If someone puts a motion in front of you and says here's what we're doing to decide whether there's been a waiver, you don't put the lawyer on the stand and say did you read the motion? Did you understand the motion? Did you talk to your client? I don't think that's how it works. I think that the court needs to make sure that the client understood what was going on. There's some context in which judges like to make such a record and their context in which a lawyer wants to put a waiver on the record but actually in most contexts there's not a requirement that the court put the defendant on the stand and question him about whether he knows what he's giving up. I'm thinking for example of when a defendant decides not to testify. The court has no independent obligation to ascertain the knowing and willingness of that waiver. Sometimes courts do and sometimes it's at the instigation of defense counsel and sometimes the court but there's no obligation on the court to do that. So what's different about this context and from what source do you derive that difference? Johnson v. Zurbist and the reply brief does cite a second circuit case, U.S. v. Canada, which reversed a conviction due to the fact that there wasn't a knowing and voluntary waiver of the right to a public trial. I understand that it's not binding on the court but we think that due to the... I'm correct that there's no case law that puts that duty squarely on the court to make the inquiry that you suggest should have been made here. Not from the U.S. Supreme Court? Or the Sixth Circuit? Or the Sixth Circuit, correct. And then did counsel... you started to sort of tell a story that when counsel initially counsel thought it was just the press and then realized it was the entire public so did counsel do something at that point? No, that's the problem. He did nothing. He didn't ask for a recess, he didn't say oh I misunderstood this I'll need a few minutes to look at what the government filed, maybe read the case and discuss this with my client. So from the standpoint of the reviewing court, apart from the ineffective assistance claim, all we have is a waiver. I would not call that a waiver, Your Honor. Not under this state of the record. There was no mention of the Sixth Amendment, no mention of the right to a public trial. The judge referred to it in terms of well we just want to clear the courtroom during the testimony of the one witness. And here the defendant is just... he obviously doesn't know what's going on because he's not getting anything from the court or his attorney as far as what's at stake here. And our alternate argument is ineffective assistance of counsel that ordinarily that must be pursued in a post-conviction petition so that counsel can explain himself. But I think here we have a strong enough record the fact that defense counsel did not know what the government requested and never asked for a recess in order to determine what the government was requesting. And where do we get this information from? From the two or three page colloquy right before jury voir dire. Would it help the 2255 petition to be able to have more information from the lawyer? I mean it seems this is the part of asking for ineffective assistance relief on direct appeal that seems quite hurtful to criminal defendants. Because you don't get another one and you're stuck with the record as is. I'm sure you didn't spend all your time trying to establish the predicate for an ineffective assistance claim. There are probably some things one would do in a 2255 proceeding that you wouldn't do here. So I've always wondered about that. It's a tough call. In the Ohio state system you must raise these arguments in the direct appeal. It requires a weighing of what, well it's a tactical decision. I feel that this record shows that defense counsel is not acting as the Sixth Amendment guaranteed counsel that Mr. Whalen was entitled to. Does the record show whether anyone was trying to get into the courtroom or would have gone into the courtroom? No, the record would not show that. It does show that it was closed. It definitely shows that because the judge told the jury what was going on. I guess you would say that doesn't matter because you would call it some form of structural problem. Yes. It would be classified as structural error. Mr. Belli, going back to your comment, you filed a reply brief. I'm not seeing a reply brief either in my file or on JudgePoint, which is the system, I'm sure I didn't go to the docket sheet, but which is the system from which we download these, unless maybe my copy is outdated and your reply, I don't know. You did file a reply brief. Yes, it was filed timely and my copy has the paste or file stamp. For some reason, I'm missing it. For the same reason, so am I. Whatever that reason is. I don't know if it's a good reason or a bad reason. Two out of three. I just look back at the argument that you make in your original brief and it appears to be kind of the argument I initially said you were making from which I retreated pretty quickly when you said your argument was something else, but I now think that probably the reason I retreated is because your reply brief had not made its way to me, but we'll find it and digest it fully. And that'll have all the answers too. One thing about this inquiry that's a little bit of a head-scratcher to me about how you just win even if it's a preserved error. So you have this comment in Presley about you have to consider other alternatives before closing the courtroom. And that seems like a strange inquiry given what the judge did here. If you want to follow that rule, all you do as a judge is you say alternative A is shut the courtroom down for the whole trial. I have this young victim and I'm going to shut it down for the whole trial. Presley says I have to consider alternatives. I know my alternative. I'll shut it down just while she's testifying. There is no other alternative. So why isn't that very test satisfied here? The alternative is an open courtroom. Juveniles testify all the time in proceedings, even in cases like this. The statute says that the government must show substantial psychological harm or inability to effectively communicate in order to justify closure. This young lady was 16 years old by the time the case went to trial. There's no indication in the record that she was going to be traumatized or unable to recite her story in an open courtroom. But isn't the reason we don't know that because counsel waived it? I'm not sure that it can be waived. The judge said this is the statutory criteria and rather than hearing anything he just read the statute and says these are my findings. I did want to address the trial issues involving the lay opinion testimony which I think is also a very important issue. Here we had a child services worker called to the stand. She had no independent knowledge of what had occurred. She was called solely for the purpose of testifying about her interview of the young lady. She gave two opinions regarding why this young lady for most of the interview was saying nothing happened between Mr. Whelan and me. She says the reason for that is that she had affection for Mr. Whelan and wanted to protect him from criminal prosecution. But then at the end when she said that he did do something to her, her explanation the caseworker is that, well I could tell from watching her that she finally unburdened herself and got it off her mind. How do you characterize this as necessarily lay testimony? Because she wasn't called as an expert. Who announces that somebody is being called as an expert? Typically the prosecutor. But what if that doesn't happen? What if you put on the drug agent who starts giving some of this quasi expert opinion about how drug deals typically develop and so on and so forth. Somebody has to do something. The defense lawyer has to say typically the trial judge may not jump in and say Halt! I want to put labels on this. And the defense lawyer takes no steps to either object because improper lay testimony, opinion testimony is being given or because she's testifying as an expert based on her experience with conducting many of these interviews. So I mean, how do we know for sure? Maybe you're right, but not necessarily. As far as expert testimony, the cases recognize the ability of the prosecution to call an expert to talk generally about syndromes, but not to whether it's an expert or a lay witness. The witness cannot give an opinion regarding the credibility of the particular... I wouldn't call it exactly an opinion about credibility, but what happens here is the witness starts talking about what generally happens in these interviews and then she does veer into talking about Haley specifically. But it's a little more complicated than just she's giving a lay opinion testimony. Well, I disagree. In a criminal case, typically the witnesses are interviewed by somebody, an agent, a detective, the prosecutor, and we don't in cases just call the FBI agent to say, well, tell us how you interviewed snitch so-and-so who is pointing the finger at the defendant because it's not relevant to the process. No, we usually use experts to talk about the interviewing of minor sexual assault victims. But that wasn't the purpose in calling the witness. What authority says the prosecutor must say I'm calling her as X before he proceeds to question her? I mean, the burden is on the defense counsel to say something. Well, that is the problem in this case and we're arguing that's plain error. One more point I'd like to make and that is defense counsel wanted to cross-examine the young lady using the audio recording of this precise interview. That's another error you coined. Right, and under this court's decision in U.S. v. Evans I think you're going to another place and unless there are other questions, I'd suggest you rest on your brief with regard to that other issue. I would like to ask a question about that. To me, that's the most problematic aspect of this case, much more so than closing the courtroom or this witness's testimony because I think it was apparent to everybody that she liked this guy and didn't want to get him in trouble. So did counsel ever say to the judge, look, a transcript isn't good enough. I want to show to the jury that this woman's will was finally overborne by this counselor and I want the jury to hear how she repeatedly denied it and then finally she told the counselor what the counselor wanted to hear and it's important for the jury to hear the tape. He did not say it that articulately, however he did. He said that he wanted to elicit disinformation. He said specifically that the interviewers were admonishing her repeatedly, you need to tell the truth, and by his count 15 times she said no, he did not do anything to me. He also complained that he started out cross-examining the young lady just through verbal questions and she continued to say well I don't recall that interview, I don't recall the details. Did he actually use the transcript? I realize he didn't get to use the video, did he use the transcript? He tried and it didn't work because regardless of what he read from the transcript or used the transcript to frame his questions, she would say I don't remember. Did he ask that it be marked if not admitted, but just marked so we would have it? No he did not. So we can't look at either of them to tell what the jury might have gleaned from either? Correct. Okay, anything further Mr. Belli? Alright, we'll hear from Mr. Gilbert. May it please the court. Your Honor, for several reasons this court should affirm the judgment of the district court. First of all, at trial Mr. Whalen's counsel did waive the right to have several issues even considered by this court on appeal. In other instances that right was forfeited and under a plain error standard of review, the court should affirm the judgment of the district court. Regarding the effective assistance of counsel argument, there's been no showing that Mr. Whalen has not met his very heavy burden of showing that his counsel provided ineffective assistance at trial under Strickland. And then third, although we haven't discussed it yet, the sentencing enhancements were properly applied by the district court. Would you guys prefer that we resolve these ineffective assistance claims now or do you think that's a little unfair to the defendants? Well, Your Honor, typically this court will not consider, as you know, an ineffective assistance of counsel claim absent a sufficiently developed record to allow the court to make that determination. Typically this is addressed on a habeas petition which has not been the case here. But under the Strickland... And typically that's as much benefit to the prosecution as it is to the defendant because it allows typically an opportunity for counsel the counsel who's alleged to have been ineffective to provide an explanation for decisions that were made. In a case like this where what you have is a bunch of failures that might arguably be inexplicable, resolving this in the context of a 2255 makes sense for both sides, doesn't it? Well, it would make sense, Your Honor, but of course there's been no habeas petition here. Well, typically that would come down the road. Yes, ma'am. That's correct. But the United States feels that the record is sufficient to allow the court to consider the ineffective assistance of counsel issue here if it so chooses. On appeal, Mr. Whalen says that there's no conceivable reason why Mr. Whalen's trial counsel did or didn't do certain things. In essence, what it boils down to is a second guessing of the trial counsel's strategic or tactical decisions. One can only try to divine what might have been the reasons for these decisions. I think any of us who have tried cases, I probably could come up with plausible reasons myself why Mr. Whalen's trial counsel did or did not do certain things. I think under Strickland it's a very heavy burden to show that the trial counsel failed to meet an objective reasonableness standard. And I don't think that there's any, by any stretch of the imagination, Mr. Whalen has sustained that burden on appeal here. I've made clear I'm most interested in the use of this tape. How do you justify not letting counsel show to the jury what it took to get this young woman to say that he had actually had inappropriate physical contact with her? Well, Your Honor, that was not the stated purpose for trying to introduce the tape. The interview was two and a half hours long. And for the court to have allowed that to be played in its entirety, obviously would have taken a great deal of the court's resources to watch this entire thing. The court did not... As an individual who got 30 years in prison, I mean, what court can't take two and a half hours? The stated purpose, Your Honor, was for Mr. Whalen's counsel to use this tape to impeach Haley on cross-examination. Now, Mr. Whalen on appeal cites the Evans case, which Mr. Belli was starting to talk about just a minute ago. The Evans case is distinguishable from the case at bar in that in the Evans case the reason for admitting a tape of an interview was not to impeach the victim on cross-examination, but rather to show that prosecutors improperly coached the witness to testify a certain way. It's the same thing, I think, in the sense that there's one person whose credibility is crucial and that's the victim. No one else was there besides the defendant and the victim. And so ultimately, the question is, is the victim credible? She gets on the stand and she says certain things happened. It's one thing to say, okay, you gave a prior inconsistent statement, you've admitted it, you're maintaining that it's false. But you're also impeaching her when you publish this tape to the jury so they see what was involved in bringing her to the point that she's testifying on the stand. It is impeachment. You're showing the jury that what she's saying on the stand is incredible because of this two-hour interaction that led to it. Your Honor, there had already been testimony to that effect. Haley had testified that she started off by giving false information to the social worker during the interview and she explained why over time she eventually told the truth. The social worker also said that initially Haley was denying that Archie Whelan had had sexual contact with her but over the span of a couple of hours built rapport and ultimately changed what she was saying. But it impeaches both of them because the question is did she establish rapport or did she browbeat her into changing her position? One would think that the best evidence is actually watching that interaction to see what was the nature of that interaction. Your Honor, district courts enjoy broad latitude in rulings of evidentiary admissibility. In this case, Judge McKinley felt that the better way of handling the admission of that evidence would be to use specific portions of the videotape in the cross examination of Haley rather than playing the entire thing. Was the argument that the defendant made that Haley was browbeaten or was it rather that Haley had changed her story therefore she could not be relied upon at all for accuracy? It was the latter, Your Honor. From your perspective, would there have been any allegation of undue influence on the part of the social worker or was it merely Haley is unreliable? Your Honor, the record shows that defense counsel was trying to admit this tape of the interview to show that Haley was not reliable, that her credibility was in question. Now, the district court to try to facilitate the cross examination said, I won't let you play the entire tape, but I'll let you play excerpts of it. Defense counsel at trial was not prepared to edit that tape and so then it was suggested that the transcript be used and that certain portions of the transcript be used. So defense counsel could have said, Judge, I'm going to need a few minutes to identify the particular part or could we take a recess for me to identify the parts I want to ask her about and figure out how to get to those parts without wasting a lot of the jury's time. But did he ask, was anything like that asked? Your Honor, he did not ask for time to edit the tape. What he did ask for was time to go through the transcript and mark portions that he thought he wanted to use during cross examination. In fact, he did take that time and came back and then continued with his cross examination. He said he didn't have the technological capability to edit the tape, right? Correct, Your Honor. So his response wasn't I need the whole two and a half hours. The only way to do this fairly is the whole two and a half hours. That wasn't his response. His response was I just don't have the technological capacity to reduce it to the 20 minutes that's relevant. Well, you don't have to necessarily, I mean, I guess my point is technologically speaking, I don't know why you would have to present a fully edited tape. I mean, presumably what he'd be doing is directing the witness to particular parts of the tape and cross examining her. Is that what you said on that occasion? Blah, blah, blah, even though she'd already admitted it. And if you know how to I mean, I have no technological expertise, but it would seem to me a fast forward button would get you from point A to point B. Yes, Your Honor, that's correct. Here we had a problem. Couldn't do that. Perhaps that becomes an argument for Miss Technological Counsel. Well, he asked for time, Your Honor, to go through the transcript and mark the parts that he wanted. He was given that time. He came back and finished his cross-examination. Now, what he was doing, however, was reading most of the transcript in its entirety, trying to admit substantive information from that transcript under the guise of an attempt to impeach Haley's credibility. Now, what he was doing is trying to admit hearsay, unsworn statement of Haley during this interview and the United States did object on grounds that it was inadmissible as hearsay. It was not being used properly to impeach her. He was trying to admit large swaths of the interview transcript rather than being surgical enough to impeach her properly. Can you talk a little bit about what the law is and other circuits with respect to whether or not it's error to exclude a tape of this type or a transcript of this type? I cannot, Your Honor, but I'd be happy to submit that in a letter brief if the court thinks that would be helpful. My understanding of the state of the law is that we don't have anything definitive on this, but other circuits are split and it might be I'm not making arguments for you, but if circuits are split on it it seems a little hard to argue it's plain error. Your Honor, I do not know what other circuits have held on this issue. Are there any other questions regarding that issue, Your Honor? I have limited time left, but going to the courtroom closure issue, clearly that's a waiver. He said twice no objection, Your Honor. There was a motion filed prior to trial. I think it's speculation to say that he somehow didn't read or understand that and we have no idea what he did or did not discuss with Mr. Whalen. Clearly that's waived and I don't think it's even reviewable by this court under the Alano case of the U.S. Supreme Court. Alternatively, even if it's forfeited, going through the Alano analysis, there was no error by the district court here. This was a very narrowly tailored closure of the courtroom. It was only during Haley's examination and if you take a look at the colloquy leading up to the ruling on the motion to close the courtroom, it's pretty apparent that nobody was really in the courtroom anyway at that time. The media wasn't there. The only people who apparently were in the courtroom at the time were the courtroom personnel, the parties and their counsel, and the marshals since Mr. Whalen was in. Is that relevant? It seems funny to have two cases. One in which some people wander in, God knows why. Another case where no one wanders in or even potentially could wander in and somehow the outcome is different. Well, it is relevant, Your Honor, under the Alano analysis. First of all, this was narrowly tailored so there was no error. But assuming there was, it wasn't plain error. And further, assuming that it was plain, I don't know how anyone could ever bear the burden of proving prejudice here because there's no way of showing who would have been closed out. I mean, we're not talking here about the rights of the people who were actually in the courtroom or who might have sought to enter the courtroom during the proceeding, even if, you know, at a later time. I mean, what we're talking about is the defendant's interest in rights. Correct, Your Honor. And so when you start saying nobody was in there anyway, that just means there weren't any members of the public who were deprived of the opportunity to do anything they might want to do, at least at the time the proceeding began to be held and closed. Yes, Your Honor. But Mr. Whalen's argument on appeal is that by closing out the public, he was denied his right to a public trial. I don't think he's made any showing that there would have been anyone in there anyway. And under the Alano analysis, even if all those elements that we just discussed... Do you have a case that says this point is relevant? That in a denial of access to a public trial, the question of prejudice, whether under Alano or anything else, turns on whether there were people that would have otherwise come into the courtroom? No, Your Honor. I don't have a case to that effect. That just seems kind of strange. I mean, that's the part of it I think that's structural. We're not supposed to ask that question. Are there further questions for Mr. Gilbert? All right, Mr. Belli, you'll have your rebuttal. Thank you, Your Honor. Okay, I have two minutes. I'd like to make a few points. I think it's important to take into account that these two trial issues, they're somewhat intertwined. You have a caseworker who's testifying, giving her opinions regarding the reasons why this young lady said one thing during most of the interview and then changed her story later on. And then you have a defense attorney who's asking to play the tape for the jury so that the jury can appreciate firsthand exactly what went on. So these two issues are related. Number two, there was an element of good cop, bad cop to the interview. What hasn't been mentioned is that there was a local police officer or detective present and the defense counsel indicated that this detective officer was trying to trick the young lady. How can we assess this argument combined if we don't have the tape or the transcript indicated? Well, I think it would have been good practice to proffer it, but it's my understanding that on cross-examination, defense counsel doesn't have the obligation to proffer information but I agree. I'm not saying one way or the other. I'm just saying, what do we do? It seems really speculative. I think under the Evans case, the Evans case says that there is no discretion when the allegation is made that there's some... Was the allegedly tricking officer a witness? No. That was Officer Wendy. She did not testify. She was from Wisconsin. So her credibility would not have been in question. But her influence on the... Well, it might have been, but was that the reason that she was... that counsel sought to use the tape? Yes. One of the reasons. Did that? Yes. So you disagree with the answer that counsel gave because Judge Gibbons asked, was the purpose for the tape to show that she's unreliable because she had made inconsistent statements previously or was it to show that they browbeated her into saying this? And counsel represented that it was the former, not the latter. Now, what's your position? I would represent that it was both. And both are legitimate reasons. I agree that they're both legitimate reasons, but were they both presented to the court? Yes. So your position is that counsel made that clear to the court? You don't have a citation to the that? No. But in the brief, I'm sorry. Brief doesn't help. We don't care what you think. We care what the transcript says. I mean, we do care what you think. I didn't mean that as being flip. But we do care what you think. But your opinion doesn't somehow convert it into what the record says. I understand. It's about five pages of transcript. It's all there concentrated. And you're saying that your brief cites to that? Yes. It definitely does. And if I may make one final point regarding this editing of a tape. I've been there. And unless you as a CJA counsel have a tech person and you've coded the transcripts with the counter numbers on the recording equipment. That's true. But you can also say to the court, look Judge, I understand what you're saying, but I only have this technology. The court has the technology. And I ask that you facilitate it. It's not up to the defendant to provide the technology to present his defense. So you've got to let the court know what you're thinking. Thank you very much. Thank you. I appreciate the argument both of you have given. And we'll consider the case carefully.